**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| RAMONA D. HAWKINS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:18-CV-83-JPK |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Deputy Commissioner for Operations, | ) | |
| Social Security Administration, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 2], filed by Plaintiff Ramona D. Hawkins on April 6, 2018, and an Opening Brief of Plaintiff in Social Security Appeal Pursuant to L.R. 7.3 [DE 18], filed on October 2, 2018. Plaintiff requests that the January 31, 2018 decision of the Administrative Law Judge denying her claim for disability insurance benefits and supplemental security income be reversed and remanded for further proceedings. On December 21, 2018, the Commissioner filed a response, and Plaintiff filed a reply on January 4, 2019. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On August 29, 2011, Plaintiff filed an application for disability insurance benefits, and on November 18, 2013, Plaintiff filed an application for supplemental security income. The disability insurance benefits application was denied initially and on reconsideration, and the supplemental security income application was escalated to the hearing level. Following a hearing held on December 18, 2013, the Administrative Law Judge (ALJ) issued an unfavorable decision. Plaintiff filed suit in federal court, and, on March 30, 2017, the district court reversed the decision and remanded for further proceedings.

On November 10, 2017, Plaintiff amended the disability onset date and requested a closed period of disability from December 31, 2009, to August 10, 2015. A new hearing was held before the ALJ on November 16, 2017, and, on January 31, 2018, the ALJ issued an unfavorable decision, making the following findings:[1]

1.    The claimant meets the insured status requirements of the Social Security Act through March 30, 2017.

2.    The claimant did not engage in substantial gainful activity during the requested closed period, December 31, 2009, to August 10, 2015.

3.    The claimant has the following severe impairments: major depressive disorder; post-traumatic stress disorder; degenerative changes of the cervical spine, lumbar degenerative disc disease, status post surgery in 2008; minimal tri-compartmental degenerative osteophytes of the right knee; minimal degenerative changes in the left knee; stable chondral lesion of the left humeral head with tendinopathy; mild degenerative changes of the left acromio-clavicular (AC) joint; mild obstructive sleep apnea; insomnia; hypothyroidism; and obesity.

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, the [ALJ found] that the claimant has the residual functional capacity to perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). She can lift, carry, push, and pull ten pounds, stand and/or walk for four hours during an eight-hour workday, sit for six hours throughout the workday, but cannot engage in any overhead work or any overhead reaching with her upper extremities. The claimant retains the mental residual functional capacity to perform tasks involving simple instructions, defined as tasks and instructions that can be learned through short demonstrations or when beyond short demonstration, up to and including one month, or in other words, special vocational preparation (SVP) levels one and two. She can make judgment and apply the common sense understanding required to carry out such instructions and tasks with both tasks and instructions falling within the realm of reasoning levels 1, 2, and 3. She can remember the associated work-

---

[1] These are direct quotes of each of the ALJ's bolded findings made at various points throughout the decision. Internal citations to the Code of Federal Regulations are omitted.

like procedures and maintain the focus, persistence, concentration, pace, and attention required to engage in such tasks for two hour increments and for eight-hour workdays within a low stress job defined as requiring only occasional decision making and only occasional changes in the work setting. The claimant can tolerate predictable changes in the work environment and meet production requirements in an environment that allows her to sustain a flexible and goal oriented pace.

6.      The claimant is unable to perform any past relevant work.

7.      The claimant was born [in 1964] and was 50[sic] years old, which is defined as a younger individual age 45–49, on the alleged disability onset date.

8.      The claimant has at least a high school education and is able to communicate in English.

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.     The claimant has not been under a disability, as defined in the Social Security Act, from August 10, 2015, through the date of this decision.[2]

(AR 580–96).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. § 405(g) for review of the Agency's decision.

---

[2] It appears that the reference to August 10, 2015, is a drafting error, as that is the date of the end of the closed period for which Plaintiff seeks disability benefits. In the "Issues" section of the Decision, the ALJ found that Plaintiff was not "under a disability within the meaning of the Social Security Act from December 31, 2009, through August 10, 2015." (AR 578).

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is, in fact, disabled but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g).

Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120– 21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see* 42 U.S.C. § 405(g). The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). "The ALJ has a basic

obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted).

## DISABILITY STANDARD

To be eligible for disability benefits under the Social Security Act, a claimant must establish that she suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any impairment listed in the regulations as presumptively disabling, (4) whether, if the claimant does not meet a listing, the claimant is unable to perform the claimant's past relevant work, and (5) whether, if the claimant is unable to perform past relevant work, the claimant is unable to perform any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The claimant bears the

burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001).

## ANALYSIS

Plaintiff alleges a closed period of disability due to both physical and mental impairments from December 31, 2009, to August 10, 2015, with the period of disability ending because she returned to work on August 10, 2015. In this appeal, Plaintiff challenges the weight the ALJ gave to the opinion evidence as well as to Plaintiff's subjective complaints. Remand is required because the ALJ did not discuss the favorable opinions of consultative reviewers Dr. M. Brill and Dr. J. Sands limiting Plaintiff to occasional reaching in all directions, did not properly weigh treating nurse practitioner Karen Lothamer's opinion that Plaintiff would miss work and be off task due to sleep problems, and drew a negative inference from Plaintiff's lack of mental health treatment from 2008 to 2011 without exploring the reasons for the lack of treatment.

### A. Ability to Reach

The ALJ found that Plaintiff has the residual functional capacity to perform less than the full range of sedentary work, identifying as one of several nonexertional limitations that Plaintiff "cannot engage in any overhead work or any overhead reaching with her upper extremities." (AR 584). The ALJ did not otherwise restrict Plaintiff's ability to reach. Plaintiff argues that the ALJ erred by not addressing the 2015 opinion of Dr. Brill and the 2016 opinion of Dr. Sands, both of which limited Plaintiff to occasional reaching in all directions.

In arriving at the overhead reaching limitation included in the RFC, the ALJ accurately discussed many aspects of the relevant medical evidence, including the Matthew 25 Clinic treatment record diagnosis of bilateral rotator cuff tears, the results of a June 2014 MRI of the right shoulder, a diagnosis of a partially torn right rotator cuff, a September 2014 examination, the May

2015 examination by neurosurgeon Dr. Isa Canavati, a June 2015 exam by physical medicine rehabilitation specialist Dr. David Lutz, and x-rays from August and November 2016. *Id*. at 593–94. The ALJ also noted that, notwithstanding the diagnostic test results and the symptoms that Plaintiff reported to Dr. Canavati and Dr. Lutz in 2015 and 2016, Plaintiff began performing office work at the substantial gainful work activity level on August 10, 2015. *Id*. at 594.

The ALJ then concluded that the overhead reaching limitation, along with other nonexertional limitations, accommodated the abnormal MRI findings and "are consistent with the opinions of the medical consultants who evaluated the claimant's physical condition on behalf of the State agency." *Id*. In support, the ALJ noted that the state agency medical consultants "opined the claimant was capable of sedentary work activities and could engage in most postural changes on an occasional basis, but could never climb ladders, ropes, or scaffolds." *Id*. (citing Exs. 4F and 11F). The cited exhibits are the November 10, 2011 Physical Residual Functional Capacity Assessment by non-examining state agency medical consultant Dr. Eskonen, and Dr. Sands's April 6, 2012 opinion affirming Dr. Eskonen's assessment. *Id*. at 352–59, 439. Neither Dr. Eskonen nor Dr. Sands assigned any reaching limitations. *Id*. at 354.

However, the ALJ did not acknowledge or discuss the more recent opinions of Dr. Brill and Dr. Sands that limit Plaintiff to occasional reaching in all directions. This was an error because an ALJ has an obligation to evaluate every medical opinion and explain the weight given to the opinion, including the opinions of state agency consultants. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996) ("Administrative law judges and the Appeals Council may not ignore [the opinions of state agency medical and psychological consultants] and must explain the weight given to these opinions in their decision."). Moreover, the ALJ was factually incorrect in stating that his physical RFC finding was consistent with the

findings of the state agency physicians because the limitation to only occasional reaching in all directions by Dr. Brill and Dr. Sands is more restrictive than the overhead reaching limitations imposed by the ALJ.

The failure to address the opinions of Dr. Brill and Dr. Sands is not harmless. Although both are non-examining medical consultants, they gave the most recent opinions based on the latest medical evidence of a worsening condition, including the June 2014 MRI of Plaintiff's right shoulder and the May 2015 cervical MRI. *See* (AR 701–02, 738). If Plaintiff is limited to only occasional reaching in all directions, she would be unable to perform any of the three occupations identified by the vocational expert and cited by the ALJ in reaching the step five conclusion that Plaintiff could perform work in the economy during the closed period of time. *Id*. at 596. Although the Commissioner is correct that the ALJ is not required to "discuss every piece of evidence in the record," the ALJ also cannot "ignore an entire line of evidence that is contrary" to the disability determination. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003); *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014). This error is compounded by the fact that the ALJ discounted Plaintiff's subjective complaints and the findings of examining physicians in 2015 and 2016 on the basis that Plaintiff engaged in "long-term substantial gainful work activity" but did not analyze to what extent her work required reaching or whether Plaintiff was working beyond her capacity. *See* (AR 594, 619, 635–36, 638–39).[3]

Although the ALJ included a detailed discussion of the medical evidence and some opinion evidence, the failure to discuss the favorable opinions of Dr. Brill and Dr. Sands regarding Plaintiff's ability to reach in all directions requires remand.

---

[3] Contrary to the Commissioner's assertion, Plaintiff did not testify that she did not have "difficulty reaching laterally." (Resp. 21, ECF No. 24) (citing AR 639). Rather, Plaintiff testified that she had trouble reaching overhead and that on some days she cannot do anything because her shoulder pain is so severe. (AR 638–39).

**B. Mental Health Opinion Evidence**

Regarding her mental impairments, Plaintiff alleges that, even though she did not start treatment until two and a half years after her alleged onset date, she had a history of abuse and depression and she suffered from the symptoms of depression and post-traumatic stress disorder (PTSD) throughout that time. However, she also acknowledges that she was well enough mentally to return to work some time in early 2014 or early 2015. In this appeal, Plaintiff argues that, when assessing her mental impairments, the ALJ erred in weighing the opinion of Dr. Kenneth Bundza and the opinion of nurse practitioner Karen Lothamer. Medical opinions are weighed by considering the following factors: (1) whether there is an examining relationship; (2) whether there is a treatment relationship, and if so the length of the treatment relationship, the frequency of the examination, and the nature and extent of the treatment relationship; (3) whether the opinion is supported by relevant evidence and by explanations from the source; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion was offered by a specialist about a medical issue related to his or her area of specialty; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6). The Court considers each opinion in turn.

*1.      Dr. Bundza*

In November 2012, Dr. Kenneth Bundza conducted a psychological evaluation of Plaintiff at the request of the Social Security Administration. (AR 410–13). Dr. Bundza concluded that Plaintiff's "clinical presentation, reported history, reported symptoms, and reported psychometric medication history would all indicate a primary diagnosis of major depressive disorder. I would rate the severity of her depression as severe. There are also some psychotic features to her depression." *Id.* at 413. Dr. Bundza noted that Plaintiff was not receiving any mental health

services or any medication services at that time, that Plaintiff was "beset by a variety of psychosocial stressors and appears to have had a trauma-ridden life," and that the "prognosis for significant improvement in the near future is guarded to poor." *Id*. Dr. Bundza assessed a GAF of 50. *Id*. In his initial December 18, 2013 decision, the ALJ considered Dr. Bundza's report and found that Plaintiff did not have a severe mental impairment that met the durational requirement. *Id*. at 24.

In the instant decision before this Court for review, the ALJ found that, with the passage of time since his first decision, new information shows that Plaintiff's mental impairments were severe for twelve months in duration. *Id*. at 582. And, at step two of the sequential analysis, the ALJ found that Plaintiff has the severe mental impairments of major depressive disorder and post-traumatic stress disorder. *Id*. at 580. The ALJ based this decision, in part, on Dr. Bundza's opinion that Plaintiff's depression was severe, to which he gave "some weight." *Id*. at 581. However, the ALJ found that Dr. Bundza's opinion that Plaintiff has severe depression did not create "disabling limitations" because the opinion was given in the context of no mental healthcare or prescribed medications. *Id*. Also, the ALJ found that Dr. Bundza's opinion that Plaintiff had a poor prognosis for improvement did not create "disabling limitations" in light of the lack of recent treatment at the time. *Id*.

In this appeal, Plaintiff first contends that the ALJ improperly relied on Plaintiff's lack of mental health treatment to discount Dr. Bundza's opinion, arguing that the ALJ did not show that Plaintiff failed to follow prescribed treatment. (Pl. Br. 15, ECF No. 18). Plaintiff misstates the ALJ's decision. The ALJ did not weigh Dr. Bundza's opinion based on any failure by Plaintiff to follow prescribed treatment but rather on the fact that Plaintiff had received no treatment at all. It was reasonable for the ALJ to consider Dr. Bundza's diagnosis and opinion against the backdrop

of Plaintiff not having received any mental health treatment from 2008 through 2011. *See Sanders v. Colvin*, No. 3:12-CV-244, 2013 WL 1680079, at *2 (N.D. Ind. Apr. 15, 2013) (finding that the ALJ's decision that the plaintiff was not disabled was supported by substantial evidence in part because, "since his alleged onset date, [the plaintiff] had received virtually no treatment" for his mental impairments).[4] To the extent Plaintiff argues that it was improper for the ALJ to consider a lack of treatment history without exploring *why* Plaintiff did not receive treatment, the Court addresses that argument in the context of Plaintiff's subjective statements in Part C below.

Second, Plaintiff argues that, if Dr. Bundza's findings are not enough to show that Plaintiff is disabled for twelve months, his opinion in combination with the opinion of Ms. Lothamer almost two years later shows that Plaintiff was disabled. It appears that Plaintiff is conflating the step two finding and the RFC determination. At step two in the instant decision (in contrast with the step two finding in the original decision), the ALJ found that Plaintiff has the severe mental impairments of major depressive disorder and PTSD, finding that the impairments are likely to last more than twelve months. The question then becomes whether the ALJ properly gave less weight to Dr. Bundza's opinion in formulating the RFC. Plaintiff reasons that Dr. Bundza found that Plaintiff had major depression, which he rated as severe, and that his evaluation revealed "an inability to work." (Pl. Br. 15, ECF No. 18).

Dr. Bundza made no finding as to functional limitations, an ability or inability to work, or any finding on the ultimate question of disability. And, on mental status examination, Dr. Bundza's

---

[4] Plaintiff's citation to 20 C.F.R. § 404.1530 and 20 C.F.R. § 416.930 in the context of this argument is misplaced because the ALJ did not make any finding based on a failure to follow prescribed treatment and because these regulations apply only when the ALJ finds that a claimant is disabled but the claimant would not be disabled if the claimant had followed prescribed treatment. *See* (Pl. Br. 15, ECF No. 18); 20 C.F.R. §§ 404.1530, 416.930; *see also* SSR 82-59, 1982 WL 31384, *1 (1982) ("An individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which the [Social Security Administration] determines can be expected to restore the individual's ability to work, cannot by virtue of such 'failure' be found to be under a disability.").

findings were largely normal other than Plaintiff's depressed affect. (AR 411–12). Notwithstanding the weight given to Dr. Bundza's opinion, the ALJ included extensive limitations in the mental RFC. Plaintiff does not acknowledge or discuss the ALJ's mental RFC determination. Nor does Plaintiff identify any aspect of Dr. Bundza's opinion that would support greater limitations than those imposed by the ALJ. And, Plaintiff does not offer any discussion of why the limitations in the mental RFC do not accommodate her mental impairments. Plaintiff has not shown that the ALJ erred in weighing the 2012 opinion of Dr. Bundza. *See Johnson v. Berryhill*, No 18 C 1395, 2018 WL 5787121, at *9 (N.D. Ill. Nov. 5, 2018) (finding that the plaintiff had failed to meet his burden of demonstrating that the record "warranted RFC restrictions greater than those imposed by the ALJ").

2.    *Ms. Lothamer and Dr. Lambertson*

On August 20, 2013, nurse practitioner Karen Lothamer completed a Medical Source Statement (MSS) that was signed the following day by psychiatrist Dr. Lambertson. (AR 564–67). In the MSS, Ms. Lothamer indicated that she had reviewed the November 7, 2011 mental status exam by Dr. Bundza as well as her own Park Center treatment records, which included the initial examination on August 29, 2012, and visits on October 22, 2012, April 9, 2013, and July 2, 2013. *Id*. at 564. Ms. Lothamer listed the symptoms of Plaintiff's mental impairments as depression, anxiety, and poor sleep. *Id*. She identified one reported depressive episode in each of 1999, 2006, and 2012. *Id*. at 565. As for Plaintiff's anxiety, Ms. Lothamer wrote that Plaintiff "reports" having anxiety attacks three to four times a week and that she has gone to the emergency room as a result. *Id*. Regarding the degree of control Plaintiff has regarding her moods and emotions, Ms. Lothamer wrote that Plaintiff becomes depressed, is irritable, and can snap at others. *Id*. As for any symptoms of PTSD, Ms. Lothamer indicated that Plaintiff hears a baby crying at night. When asked if

Plaintiff's mental illness is serious enough that she would likely be absent from work, Ms. Lothamer responded, "yes," and explained that it would be due to poor sleep. *Id*. at 566. Ms. Lothamer opined that Plaintiff would miss greater than three days of work a month due to mental illness and that Plaintiff could remain on task 70–75% of the work day. *Id*. Ms. Lothamer stated that Plaintiff's treatment plan is consistent with the nature and severity of her mental impairments. *Id*. Ms. Lothamer did not give an opinion as to whether Plaintiff's symptoms would worsen if Plaintiff were to return to work. *Id*. at 567.

The ALJ declined to give great weight to this August 20, 2013 treating opinion, finding that the opinion was based largely on Plaintiff's self-reports rather than Ms. Lothamer's observations and was not supported by the Park Center treatment records or the other evidence of record, including the fact that Plaintiff returned to full-time work on August 10, 2015. *See id*. at 587–90. The ALJ also noted that Plaintiff indicated that she was emotionally ready to return to work in 2014. *Id*. at 591. In weighing the opinion, the ALJ recognized that Ms. Lothamer was a treating source who saw Plaintiff for a lengthy period of time but also that, after the initial evaluation, Ms. Lothamer saw Plaintiff on only three occasions. The ALJ also recognized that Ms. Lothamer and Dr. Lambertson are specialists in mental healthcare. The ALJ then addressed Ms. Lothamer's opinion that Plaintiff would miss three or more days a month due to poor sleep, detailing many of the treatment records and finding that they did not reflect ongoing findings of sleepiness. *Id*. at 587. The ALJ explicitly considered whether Plaintiff's inconsistent use or misuse of medication is caused by her mental impairments and found that Plaintiff had not met her burden of demonstrating that it was. *Id*. at 589. The ALJ concluded that this opinion is "not well supported by the fact that the claimant in December 2015 reported worsening symptoms due to working and yet she had been performing substantial gainful work activity at very high levels since August

2015." *Id*. at 590. The ALJ found it noteworthy that Plaintiff worked in 2015, 2016, and 2017 despite alleging worsening symptoms. *Id.*

In this appeal, Plaintiff argues that the ALJ committed six errors in evaluating Ms. Lothamer's opinion. First, Plaintiff criticizes the ALJ for discounting the opinion on the basis that it was grounded largely on Plaintiff's "self-report" and not as "actually observed as objective medical findings." *Id*. at 586–87. The ALJ wrote that the reports of anxiety, panic attacks, response to external stimuli, significant apprehension, sleep behavior, and obsessive-compulsive thoughts were unreliable because they were reports made by Plaintiff and not actually observed by Ms. Lothamer. *Id*. at 587. Plaintiff argues that this is an error because all of these self-reported "symptoms" constitute "signs" and "objective medical evidence," citing footnote 2 to Social Security Ruling 96-4p. *See* (Pl. Br. 17, ECF No. 18). This is an incorrect reading of SSR 96-4p. Footnote 2 in SSR 96-4p follows the word "symptoms" in this section explaining how a claimant can establish a medically determinable physical or mental impairment:

> An "impairment" must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Although the regulations provide that the existence of a medically determinable physical or mental impairment must be established by medical evidence consisting of signs, *symptoms*,[fn] and laboratory findings, the regulations further provide that under no circumstances may the existence of an impairment be established on the basis of symptoms alone. Thus, regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings.

SSR 96-4p, 1996 WL 374187, at *1, *1–2 (July 2, 1996) (emphasis added).

Footnote 2, which is cited by Plaintiff, then provides:

> 20 CFR 404.1528, 404.1529, 416.928, and 416.929 provide that *symptoms*, such as pain, fatigue, shortness of breath, weakness or nervousness, are an individual's own perception or description of the impact of his or her physical or mental impairment(s). . . . However, *when any of these manifestations is an anatomical,*

*physiological, or psychological abnormality that can be shown by medically acceptable clinical diagnostic techniques*, it represents a medical "sign" rather than a "symptom."

*Id.* at *1, n.2 (emphasis added).[5] This language does not say that a symptom itself constitutes a sign or objective medical evidence. Rather, *if* the claimant's self-reported "symptom," such as a complaint of pain or fatigue, is *separately* observed or shown by a medically acceptable diagnostic technique, *then* the symptom can also constitute a "sign."[6] For example, saying "I'm tired and haven't slept in several days" is a "symptom," whereas an examiner's notation of "cloudy/drowsy" or "somnolent" would be a "sign."

Nevertheless, Plaintiff is correct that the Seventh Circuit Court of Appeals has criticized giving less weight to the assessment of a mental health professional simply because the assessment is based on what the patient tells the mental health professional. *See Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015) (citing *Adaire v. Colvin*, 778 F.3d 685, 688 (7th Cir. 2015)). In *Price*, the court explained that "psychiatric assessments normally are based primarily on what the patient tells the psychiatrist." 794 F.3d at 840; *see also Gerstner v. Berryhill*, 879 F.3d 257, 262 (7th Cir. 2018)

---

[5] Ruling 96-4p was rescinded, effective June 14, 2018, as duplicative of SSR 16-3p, which provides the following on this issue:

> An individual's symptoms, such as pain, fatigue, shortness of breath, weakness, nervousness, or periods of poor concentration will not be found to affect the ability to perform work-related activities for an adult . . . unless medical signs or laboratory findings show a medically determinable impairment is present. Signs are anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques that can be observed apart from an individual's symptoms.

SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017).

[6] Plaintiff cites *Liscano v. Barnhart*, 230 F. Supp. 2d 871, 884–85 (N.D. Ind. 2002), in support of her reading of SSR 96-4p. (Pl. Br. 17, ECF No. 18); (Reply 6, ECF No. 25). However, *Liscano* correctly describes the regulations and does not support Plaintiff's interpretation:

> To handle this type of impairment, Social Security provides in Social Security Ruling ("SSR") 96–4p that while subjective symptoms (i.e., complaints of pain and fatigue) alone are insufficient to establish a disability, *see* 20 C.F.R. §§ 404.1528(a); 416.928(a), those subjective complaints will represent objective "medical signs" (as defined by 20 C.F.R. §§ 404.1528(b); 416.928(b)) *when "any of these manifestations is an anatomical [or] physiological ... abnormality that can be shown by medically acceptable clinical or diagnostic techniques*[.]" SSR 96-4p n. 2 (citing 20 C.F.R. §§ 404.1528; 404.1529; 416.928; 416.929).

230 F. Supp. 2d at 884 (emphasis added).

("But all findings in psychiatric notes must be considered, even if they were based on the patient's own account of her mental symptoms."). In *Adaire*, the court found illogical the ALJ's remark that a psychologist and a therapist who testified that the applicant suffers from panic attacks had not witnessed the panic attacks themselves. 778 F.3d at 688. The court noted that the plaintiff stated he suffered panic attacks, the psychologist and the therapist believed the plaintiff, and there was no basis for the ALJ to disbelieve the medical professionals. *Id.*; *see also Thompson v. Berryhill*, 722 F. App'x 573, 581 (7th Cir. 2018) (rejecting the ALJ's logic in dismissing a treating physician's report for being purportedly based on the plaintiff's subjective complaints and not "independently verified," finding that the ALJ failed to recognize that the physician completed an objective assessment of the plaintiff's mental functioning and noting the "rule that opinions derived from subjective reports are not automatically suspect"). Thus, the general fact that Ms. Lothamer's opinion was based on Plaintiff's reports is not a basis for discounting the opinion.

In her second and sixth arguments, Plaintiff contends that the ALJ erred in finding that Ms. Lothamer's opinion that Plaintiff's poor sleep would cause absenteeism and an inability to focus is not supported by the record. In the decision, the ALJ explained that Ms. Lothamer's opinion that Plaintiff would be absent from work more than three days a month and would be off task 70–75% of the day was not supported by the record because her treatment notes did not reflect ongoing findings of sleepiness, somnolence, poor focus, or confusion; the treatment records largely reflect subjective complaints; and the treatment records indicate that Plaintiff had "coherent thought form, normal thought content, no memory issues, appropriate judgment, normal perception, etc., as well as no evidence of somnolence, drowsiness, and cloudy sensorium on mental status exam." (AR 587). The ALJ also discussed the October 2012 treatment record and mental status exam that showed Plaintiff was awake and alert and not cloudy/drowsy, somnolent, stuporous, or "other"

and that showed other normal behavioral findings. *Id*. Thus, the ALJ found that "such a noted limitation of function is based upon subjective complaints or is speculative." *Id*.

In drawing this conclusion, the ALJ did not consider several records during the relevant closed period (December 31, 2009, through August 10, 2015) that support Plaintiff's complaints of sleep difficulties, namely a March 31, 2010 sleep study that found mild obstructive sleep apnea syndrome, *id*. at 499; a May 11, 2011 follow up visit at the Matthew 25 Clinic, *id*. at 518; Plaintiff's report in August 2011 that her insomnia had become worse even though she was using Amitriptyline, *id*. at 514; an October 5, 2011 report that she continued to have problems with insomnia and had excessive fatigue, that Amitriptyline was not effective at the prescribed dose, and that she would take a two-hour nap during the day, *id*. at 508; and an April 10, 2012 report that she suffered from depression and insomnia, that she had tried Amitriptyline and melatonin (it also indicates that she had a referral to IUPU counseling but did not go), and that she was referred to Park Center (which is where Ms. Lothamer treated Plaintiff), *id*. at 562.

In discussing subsequent records, the ALJ focused generally on the subjective nature of Plaintiff's reports but did not specifically acknowledge the content of those reports. For example, in August 2012, Plaintiff reported that she did not sleep well despite taking medications and was only sleeping five hours each night. *Id*. at 461. In an October 2012 phone call to Park Center, Plaintiff reported that her sleep medication was not working. *Id*. at 459. Later in October, when she met with Ms. Lothamer, Plaintiff reported that she was having nightmares and flashbacks as a result of a recent shooting she witnessed. *Id*. at 453. In April 2013, Plaintiff reported to Ms. Lothamer that she continued to have poor sleep and visions of her friend being shot. *Id*. at 1320. Plaintiff reported that Fanapt helped somewhat, and Ms. Lothamer increased the dose. *Id*. Also,

Plaintiff explained that she had difficulty falling asleep but then, once asleep, would awaken during the night, which caused Ms. Lothamer to adjust Plaintiff's use of Remeron. *Id.*

The ALJ correctly noted that, at the September 2013 visit, Plaintiff did not complain to Ms. Lothamer about fatigue, depression, or anxiety but rather complained of pain all over her body. (AR 588). But, the ALJ did not note the portion of the December 30, 2013 treatment note in which Plaintiff reported to Ms. Lothamer that she was not taking Remeron or Pericatin and that Cymbalta in the afternoon worked best but continued to make her sleepy. *Id.* at 1327. Instead, the ALJ noted certain check box findings that Plaintiff was "maintaining well and stable," her severity level was mild, and she had no medication side effects. *Id.* at 589; *see also id.* at 1328–30.

In April 2014, Plaintiff made no complaints to Ms. Lothamer about sleep. *Id.* at 1415. The ALJ noted that in June 2014, Plaintiff was sleeping better. *Id.* at 589. The Court notes that, although the September 14, 2014 medication review is not in the record, the treatment plan indicates that, at that time, Plaintiff reported her symptoms were better, and Plaintiff did not report any sleep issues in October 2014 or April 2015. *Id.* at 1343, 1351, 1449. Finally, the ALJ noted that, in July 2015, Plaintiff reported that, although Cymbalta was working, it caused her not to sleep at night; the ALJ also noted that Ms. Lothamer adjusted Plaintiff's dosage of Cymbalta as a result. However, these reports from 2014 and 2015 are not inconsistent with Plaintiff's testimony that her mental health condition had improved in 2014 to the point where she could return to work. Overall, the ALJ failed to discuss the favorable records demonstrating Plaintiff's sleep difficulties during the closed period.

In addition, the ALJ found two complaints by Plaintiff of excessive sleep to be contradictory to Ms. Lothamer's finding of sleep problems. The ALJ noted that, on July 25, 2013, Plaintiff reported that Remeron was causing excessive sleep and, as a result, Plaintiff's medication

was reduced and Periactin was added for nightmares. *Id*. at 588, 1390. The ALJ relied on this report of excessive sleep, noting that it was given just six weeks before Ms. Lothamer's August 20, 2013 MSS report that Plaintiff had poor sleep, to discredit Ms. Lothamer's opinion. *Id*. at 588. Likewise, the ALJ noted that, on November 5, 2013, Plaintiff reported that an increase in her dose of Cymbalta caused her to feel sleepy. *Id*. at 1318. The ALJ again reasoned that this report of being "sleepy" "suggests her sleep was not poor." *Id*. at 589. The ALJ draws this conclusion without support from the record. The ALJ does not explain why excessive sleep as a side effect of medication does not constitute a sleep problem or contribute to poor sleep.

Finally, the ALJ interpreted the absence of mental status exam findings of somnolence, drowsiness, or cloudy sensorium to mean that Plaintiff did not have poor sleep. However, this finding is not based on any medical opinion. And, the ALJ does not explain why the mental status exam findings in the Park Center records of fatigue, decreased energy, mood disturbances, and anxiety are not indications of poor sleep.

For all of these reasons, the ALJ's decision to give less weight to Ms. Lothamer's opinion that Plaintiff's work attendance and attention would be affected by poor sleep is not supported by substantial evidence. The Court remands on this issue to allow the ALJ to reconsider Ms. Lothamer's opinion that Plaintiff would have missed work three days a month and would have been off task 70–75% of the time due to poor sleep.

Third, Plaintiff argues that the ALJ erred by interpreting Ms. Lothamer's findings of "symptomatic but stable" and "maintaining well and stable" to mean that no greater limitations were required than those included in the RFC. The ALJ wrote, "Such conclusions [of "symptomatic but stable" and "maintaining well and stable"] indicate symptomotology but do not appear to dictate or support an argument that . . . greater functional limitations than those reflected

in the residual functional capacity assessment are required." *Id*. at 590. This neutral comment by the ALJ is accurate and does not require remand. Both the ALJ and Plaintiff are correct that the findings of "symptomatic but stable" and "maintaining well and stable," in and of themselves, do not inform the question of whether Plaintiff is capable of working or whether she has improved sufficiently to not be "disabled" within the meaning of the regulations. *See Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) (reasoning that characterizations that the claimant is medically improving and "neurologically stable" "do not give us an accurate description of the [claimant's] true neurological state"). What does matter is Plaintiff's condition in which these findings of "stable" are made and what limitations flow from the condition. Remand is not required on this issue.

Fourth, Plaintiff argues that her school and work activity are not inconsistent with her alleged closed period of disability because her mental impairments did not improve sufficiently for her to work until sometime in 2014 or early 2015. The Court disagrees. It was rational for the ALJ to reason that Plaintiff's "work activity in 2015, 2016, and 2017 is particularly noteworthy in that she worked and did so despite alleging *worsening* symptoms" and that the "worsening symptoms are alleged as already disabling." (AR 590–91). This is a logical reason to discount Ms. Lothamer's opinion.

Finally, Plaintiff argues that the ALJ "played doctor" in evaluating Ms. Lothamer's opinion given that Ms. Lothamer diagnosed Plaintiff with PTSD and treated her for it. (Pl. Br. 20–21, ECF No. 18). Plaintiff argues that, someone with PTSD may have "symptom recurrence anticipation" in response to ongoing life stressors, which may explain Plaintiff's mental problems "as a result of her significant thoughts of physical functioning due to her back injury." *Id*. at 21. Plaintiff also reasons that this may explain the intensity of her sleep problems. *Id*. However, this is speculation

on Plaintiff's part, unsupported by any citation to medical evidence that she suffers from symptom recurrence as a result of her PTSD. The Commissioner is correct that the "mere diagnosis" of an impairment "says nothing" about the functional limitations it imposes. *Schmidt v. Barnhart*, 395 F.3d 737, 745–46 (7th Cir. 2005). Plaintiff has not identified any instance in which the ALJ "played doctor" in relation to limitations flowing from her PTSD that are supported by Ms. Lothamer's opinion. Notably, the ALJ found PTSD to be a severe impairment. Reversal is not required on this basis.

Having considered Plaintiff's arguments and notwithstanding the fact that the ALJ considered and discussed all of the relevant factors in weighing Ms. Lothamer's opinion, the ALJ's discussion of Ms. Lothamer's opinion that Plaintiff would miss work and would be off task as a result of sleep problems is not supported by substantial evidence and requires remand.

### C. Plaintiff's Subjective Symptoms

An ALJ follows a two-step process to evaluate a claimant's subjective complaints. *See* 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms. *Id*. at §§ 404.1529(a), (b), 416.929(a), (b). Second, once the existence of such a medically determinable impairment is established, the ALJ evaluates the intensity and persistence of the claimant's symptoms to determine the extent to which they impose work-related functional limitations. *Id*. at §§ 404.1529(a), (c), 416.929(a), (c). Plaintiff presents three arguments related to the ALJ's assessment of her subjective symptoms.

First, Plaintiff argues that the ALJ erred in relying on Plaintiff's lack of early mental health treatment to give less weight to her subjective statements. The ALJ noted that Plaintiff did not undergo any mental health treatment from 2008 through 2011 and did not take any psychotropic

medications during that time, commenting that "[t]his does not enhance the claimant's allegations that she had disabling or even severe mental symptoms during this period." *Id*. at 586. However, the ALJ did not explore with Plaintiff why she did not receive treatment or take medication during that time period. Notably, in November 2011, Dr. Bundza indicated that Plaintiff had inadequate finances and inadequate access to healthcare. *Id*. at 413. The Commissioner responds that the records show that Plaintiff was able to obtain low-cost treatment to treat other issues during the same time period, but the ALJ did not discuss this fact. Also, at the first hearing, Plaintiff testified that she was having side effects from antidepressants and thought she could handle the mental problems on her own. *Id*. at 88–89. At the second hearing, Plaintiff's attorney pointed out that Plaintiff had testified that she was trying to get better on her own during that time. *Id*. at 640. And, at the initial evaluation at Park Center in June 2012, Plaintiff reported that she had side effects from almost all of her medications and that she took herself off of the medications because she was tired of them and wanted to be normal. *Id*. at 481.

Although treatment history is a relevant factor when considering a claimant's symptoms, the ALJ erred by drawing a negative inference from the lack of treatment without exploring Plaintiff's reasons for not getting treatment during that time period. *See Garcia v. Colvin*, 741 F.3d 758, 762–63 (7th Cir. 2013); *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012); 20 C.F.R. §§ 404.1529(c)(3)(v); 416.929(c)(3)(v); SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017) (explaining that an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not . . . seek treatment consistent with the degree of his or her complaints"). Because the Court is remanding on other grounds, the ALJ is directed to explore the reasons for Plaintiff not obtaining mental health treatment from 2008 to 2011, which may require the ALJ to contact the Plaintiff "regarding the

lack of treatment or, at an administrative proceeding, ask why . . . she has not . . . sought treatment in a manner consistent with . . . her complaints." SSR 16-3p, 2017 WL 5180304, at *9.

Second, on an issue identified by the District Court on the previous appeal, the ALJ on remand explicitly considered whether Plaintiff's inconsistent use or misuse of medication was caused by her mental impairments and found that Plaintiff had not met her burden of demonstrating that it was. (AR 589). Plaintiff argues that, in making this finding, the ALJ attempted to "dodge the mandate of the Court" that a determination needs to be made as to whether her mental illness had anything to do with her medication problems. (Pl. Br. 23, ECF No. 18). Plaintiff is incorrect; the ALJ directly addressed the issue and found that there was no such evidence. Moreover, Plaintiff does not even attempt to argue, much less identify evidence, that her failure to seek treatment or her inconsistent use of or misuse of medication was attributable to her mental impairments. The ALJ did not err in this regard.

Third, Plaintiff contests the ALJ's decision to discount her statements of disabling symptoms, in part, because she rated her depression as nine on a scale of one to ten, with ten being the most disabling, during the August 2015 consultative evaluation by Dr. Sherbinski. The ALJ found the rating to be inconsistent with the daily activities that Plaintiff reported to Dr. Sherbinski of independent self-care, driving and fixing sandwiches/soup daily, cooking weekly, and shopping and doing laundry monthly. (AR 591). Plaintiff fails to note that the ALJ also recognized that Plaintiff reported working part time (fifteen hours a week) at Reliable Cleaning for the previous several months, that she had been attending college (studying twenty to twenty-five hours a week), that she was in a work-study program, and that she enjoyed recreational and leisure activities such as going to garage sales and thrift stores, working in her yard, and cooking. *Id*. Plaintiff does not contest her ability to perform any of these activities.

Moreover, Plaintiff reinforces the ALJ's analysis by noting her own hearing testimony that, through medication and therapy, she had become able to cope with her problems. *Id.* at 626–30. By the time Plaintiff was evaluated by Dr. Sherbinski in August 2015, her mental impairments had improved sufficiently for her to return to work. *See id.* This was specifically noted by the ALJ: "The undersigned is mindful that during the hearing, the claimant alleged she was emotionally able to work as of 2014 after she started treating with a new counselor who was helpful." *Id.* at 591. The ALJ also noted, "[T]he claimant started working full time and at substantial gainful work activity levels in August 2015. Her very high levels of mental complaints during her consultative psychological evaluation with Dr. Sherbinski in August 2015 are considered in light of the fact that the claimant now requests a closed period which end date is at the beginning of August 2015." *Id.* The ALJ did not err in evaluating Plaintiff's allegation of disabling depression in August 2015.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief sought in the Opening Brief of Plaintiff in Social Security Appeal Pursuant to L.R. 7.3 [DE 18], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Plaintiff and against Defendant.

So ORDERED this 4th day of April, 2019.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT